**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **WILLIAM J. HIX** | § | |
| | § | |
| **VS.** | § | **A-15-CV-1009-LY** |
| | § | |
| **BOSQUE COUNTY, TEXAS, ET AL.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before the Court are: Defendant Bosque County, Texas' Rule 12 Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. No. 15); Plaintiff's Response to Bosque County's Second Motion to Dismiss (Dkt. No. 25); Defendant's Reply (Dkt. No. 27); Hix's Sur-Reply (Dkt. No. 28); Hix's Advisory to the Court (Dkt. No. 31); and Bosque County's Response (Dkt No. 32).  Also before the Court are: Defendant Bosque, County, Texas' Rule 11(c) Motion for Sanctions (Dkt. No. 12); and Plaintiff's Response (Dkt. No. 22). The Court held a hearing on the motions on April 26, 2016. The undersigned submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas.

## I. GENERAL BACKGROUND

In this declaratory judgment action William Hix sues various Texas counties, soil and water conservation districts, and three of his neighbors.[1] Hix asks the Court to declare, pursuant to the Federal Declaratory Judgment Act, that a judgment of the Tenth Court of Appeals of the State of

---

[1]Hix names the following parties: Bosque County; Bosque County Soil and Water Conservation District; Hamilton-Coryell County Soil and Water Conservation District; McLennan County Soil and Water Conservation District; Coryell County; McLennan County; William C. Robertson; Lester E. Robertson; and Donald Adams.

Texas is preempted by federal law.  Dkt. No. 13 at 4.  Additionally, he asks the Court to declare under the Texas Uniform Declaratory Judgments Act that the same Court of Appeals' decision is void on various bases.  Hix has not served any of the defendants, though Bosque County has responded to the suit.[2]

This case is about the tenth—and hopefully the last— chapter in William Hix's dispute with his rural neighbors regarding access to, and use of, a small lake on Hog Creek in Coryell County. Hix owns approximately 680 acres of land adjoining Hog Creek just as it flows out of Coryell County on its way to Lake Waco in McLennan County.  In the 1960s, various counties, local organizations, and the State of Texas applied to the U.S. Department of Agriculture Soil Conversation Service for financial and technical assistance in preparing a plan of works for improving the Hog Creek Watershed, with the goal of reducing flooding in that watershed. As a result of the application, a Watershed Work Plan was executed in March 1969.  Dkt. No. 8-1.  As part of this project, in 1968 Bosque County obtained an easement from W.T. Hix (William's father and predecessor owner), granting Bosque County the right to build, operate, maintain, and impound waters in a conservation dam and reservoir across Hog Creek, adjoining Hix's land.

The project called for the impoundment of water, creating a "lake effect" on the property. The lake is approximately 100 acres, 90 of which are on Hix's land and 10 of which are on the adjoining property to the west, owned by the Robertsons. A boundary fence that enclosed  Hix's property prior to the creation of the reservoir remained in place across Hog Creek after the lake was created.  From the time the lake was created until 2004, the Robertsons apparently used the entire lake for fishing and boating.  In the summer of 2004, however, Hix built a higher fence across the lake to prevent

---

[2]When he first filed the case, Hix named as defendants the State of Texas and three of its subdivisions (the TCEQ, the General Land Office and the Parks and Wildlife Department).  When those defendants raised a sovereign immunity defense, he dropped all of his claims against them. *See* Dkt. Nos. 5, 10.

the Robertsons from accessing the 90 acres on Hix's land. This led to the Robertsons filing a lawsuit in Coryell County against W.T. Hix, William J. Hix and R. Coke Mills, seeking a declaration that Hog Creek is a "navigable" stream, the lake was created for the "use and enjoyment" of all the landowners, and "is and has at all times been owned by the State of Texas." The Robertsons also sought an order requiring Hix to remove the fence crossing the lake and enjoining Hix from interfering with access to the lake.

After protracted litigation, on March 29, 2005, the trial court granted the Robertsons' motion for summary judgment finding that although the bed of Hog Creek was owned by Hix, the creek was navigable "from its mouth up to the low-water crossing in Coryell County, Texas approximately 2.7 miles northwest of the intersection of County Road 224 and FM Road 217" and therefore was open to the public for fishing, boating and recreational purposes. The state court also permanently enjoined Hix from interfering with the Robertsons' use of the lake, and ordered that he lower "at least a 14-feet section of the fence . . . so that it does not interfere with [the Robertsons'] access to the entire lake." Dkt. No. 4-1.  In 2006, the Tenth Court of Appeals in Waco affirmed the trial court's judgment, with minor modifications. *Hix. v. Robertson*, 211 S.W.3d 423 (Tex. App. – Waco 2006, pet den'd).  The Texas Supreme Court declined to review the case, Hix did not seek review by the U.S. Supreme Court, and the mandate issued from the Waco court on June 17, 2008.

Shortly thereafter, Coryell County filed a plea in intervention, with the stated goal of avoiding a multiplicity of suits and claims that might have resulted from the declaration that Hog Creek is statutorily navigable. Coryell County argued that not all necessary parties had been included in the suit, and the Court of Appeals' decision pertained to an interlocutory order.  The Robertsons responded that the plea in intervention should be denied, as the case was finally disposed of.  Hix filed a motion to abate.  The trial court found the summary judgment did not dispose of all parties and issues and granted the motions to abate and stayed execution of the judgment. The Robertsons

then sought a writ of mandamus requiring the trial court to enforce the judgment. In April 2009 the Tenth Court of Appeals issued an order concluding the trial court's judgment was final under *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191 (Tex. 2001), and required the trial court to lift the stay of its judgment.

This, however, did not end Hix's campaign. In June of 2012, Hix, who is a licensed attorney in Texas, filed a petition for declaratory judgment in Bosque County District Court. Dkt. No. 4-1. When Bosque County sought dismissal of the case, he non-suited it. Dkt. No. 4-2. A month later, on April 22, 2013, Hix filed suit in federal court in Waco, Texas. Dkt. No. 4-3.[3] Hix brought that lawsuit to obtain a declaratory judgment as to the rights and duties of the parties under the easement granted by his parents to Bosque County in 1968 for the construction and maintenance of the flood control improvements completed in the late 1960s and early 1970s. The suit sought a declaration that Bosque County and its Commissioners Court had a legal duty to take steps to keep the public out of the improvements and the lake and to prosecute those who accessed the lake; in the alternative Hix sought money damages for the diminution in the value of his property. On August 16, 2013, Judge Walter Smith dismissed the suit without prejudice on the basis that the federal court lacked subject matter jurisdiction over the § 1983 claim under the *Rooker-Feldman* doctrine, and lacked jurisdiction over the declaratory judgment action because it failed to satisfy the well-pleaded complaint rule. Dkt. No. 4-4. No appeal was taken from Judge Smith's order.

More than two years after the dismissal of the Waco suit, Hix filed this case. Bosque County moves to dismiss the case on a number of bases: (1) lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine; (2) failure to join all the parties to the Hog Creek Watershed Work Plan;

---

[3] *William J Hix, Independent Executor of the Estates of W. T. Hix, Deceased, and Harriet S. Hix Deceased v. Bosque County, Texas and the Commissioners Court of Bosque County, Texas*. Civil Action No. W-13-CA-136-WSS.

(3) lack of subject matter jurisdiction over what is a request for collateral review over Judge Smith's prior order; (4) lack of subject matter jurisdiction because Hix's claims do not arise under federal law; and (5) failure to state a federally justiciable right under the Federal Declaratory Judgment Act as to Bosque County.  Hix responds that he seeks review of the state court record to determine if the Tenth Court of Appeals' decision is void, which he asserts is not a collateral attack on the judgment and therefore not precluded by the *Rooker-Feldman* doctrine.

## II.  STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction tests the court's statutory or constitutional power to adjudicate the case.  *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts. *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001). When a Rule 12(b)(1) motion is filed with other Rule 12 motions, the court should address the jurisdictional attack before addressing any attack on the merits. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999) ( "Customarily, a federal court first resolves doubts about its jurisdiction over the subject matter . . . .").

Rule 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted."  While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A plaintiff's obligation "requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Id.* The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2009).

### III.  MOTION TO DISMISS

#### A.      The *Rooker-Feldman* Doctrine

Bosque County argues that Hix's Federal Declaratory Judgment Act claim should be dismissed for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine because it is an attempt to re-litigate a prior state court judgment. Hix responds that the Tenth Court of Appeals' judgment is void, and the *Rooker-Feldman* doctrine does not apply to state court judgments that are void.

The *Rooker-Feldman* doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). A federal complainant cannot circumvent the doctrine by asserting claims not raised in state court proceedings or by framing claims as original claims for relief. The doctrine is based on the fundamental nature of our federalist system in which, if a state court errs, correction of that error is left to the appropriate state appellate court, and federal recourse is limited to seeking a writ of certiorari from the United States Supreme Court. *Liedtke v. State Bar of Texas*, 18 F.3d 315, 317 (5th Cir.1994); *see also Atlantic Coast Line Railroad Co. v. Brotherhood*

*of Locomotive Engineers*, 398 U.S. 281, 296 (1970) ("lower federal courts possess no power whatever to sit in direct review of state court decisions").  Additionally, if the district court must examine issues that are "inextricably intertwined" with a state judgment, and the court is effectively being requested to review the state court decision, under the *Rooker-Feldman* doctrine the court lacks jurisdiction as well.  *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 n.16 (1983);  *Liedtke*, 18 F.3d at 317-18.

Hix's federal declaratory judgment claims are wide-ranging (he requests fifteen very detailed declarations), but the gravamen of his suit can be found in his request for a declaration that:

> any increase in the average width of Hog Creek was proximately caused by the Hog Creek Watershed improvements constructed pursuant to the Watershed Protection and Flood Prevention Act, accordingly federal law preempts application of Tex. Nat. Res. Code to modify or alter the purpose or use of the impounded water accumulated as a result of the Hog Creek Watershed Work Plan *therefore Hog Creek is not a statutory navigable stream as opined by the Tenth Circuit Court of Appeals*.

Dkt. No. 13 at ¶ 33(l) (emphasis added).  This is effectively the polar opposite of what the state court declared in the 2004 litigation.  Further, at a minimum, all of the issues the suit raises are inextricably intertwined with the state court's judgment from the prior litigation.  Thus, unless Hix can establish an exception to *Rooker-Feldman*, the Court does not have jurisdiction over his claim.

## B.      Exception to *Rooker-Feldman*

Hix claims that his attack on the state court judgment is allowed under an alleged exception to *Rooker-Feldman*.  That alleged exception provides that, while generally a state court judgment is not subject to collateral attack in federal court, the *Rooker-Feldman* rule does not apply if the underlying state court judgment is void.  The Fifth Circuit has described the exception as providing "that a state-court judgment that is void for want of subject-matter or personal jurisdiction, or that was obtained by fraud, is subject to collateral attack in federal court."  *Houston v. Venneta Queen*, 606 Fed.Appx. 725, 733 (5th Cir. 2015).  Importantly, as the court noted in *Houston*,  neither "[the

7

Fifth Circuit] nor the Supreme Court has endorsed this exception . . . and the cases that do recognize this exception . . . indicate that it is presently limited to the bankruptcy context." *Id.*[4]  The Seventh and Tenth Circuits have reached the same conclusion.  *Anderson v. Private Capital Grp., Inc.*, 549 Fed. Appx. 715, 717-18 (10th Cir. 2013)*; Schmitt v. Schmitt*, 324 F.3d 484, 487 (7th Cir. 2003) ("While a *void ab initio Rooker–Feldman* exception might be appropriate in some bankruptcy cases (apparently the only situation in which it has been applied) . . . it has no place here.").  In 2007, the Eighth Circuit was presented with a nearly identical argument to that made by Hix here.  The court noted that:

> Skit's federal complaint is in many ways a classic illustration of the cases covered by the *Rooker-Feldman* doctrine.  On its face the complaint . . . seeks to have [the Arkansas judgment] declared void.  This was the same relief sought by the plaintiffs in *Rooker*.  There, the Supreme Court noted that even if the state court judgment were erroneous, "that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding."

*Skit Int'l, Ltd. v. DAC Tech. of Ark., Inc.*, 487 F.3d 1154, 1157 (8th Cir. 2007) (citations omitted). In short, there is no authority for Hix's claim to the existence of a void *ab initio* exception to *Rooker-Feldman* that could apply here.[5]

---

[4]Even in the bankruptcy context, courts have been reluctant to recognize or apply the exception. *See, e.g., In re Goodman*, 2015 WL 3507119 (N.D. Ohio June 1, 2015) at *4 (noting that cases that have applied the exception "generally involve action that usurps or limits a bankruptcy court's authority in its domain").

[5]In his brief, Hix relies on *United States v. Shepherd*, 23 F.3d 923 (5th Cir.1994) and *Salinas v. U.S. Bank National Assoc.,* No. 13-41012 (5th Cir. 2014) for his claim that there is a voidness exception to the *Rooker-Feldman* doctrine.  But these cases do not state this.  In *Shepherd*, the court noted only that "the government argues that the state judgment is void and therefore subject to collateral attack," citing to a *Texas* Supreme Court decision.  23 F.3d at 925 n. 3.  It appears that the court in *Shepherd* was addressing an argument based on Texas law, not an exception to the *Rooker-Feldman* doctrine.  *Salinas*—which is an unpublished *per curiam* decision—simply quotes language from *Shepherd* and then finds it inapplicable to the case before it.  Neither case recognizes a voidness exception to *Rooker-Feldman*.

**C.     The State Court Judgment is not "Void"**

Even if there were a void *ab initio* exception to the *Rooker-Feldman* doctrine, Hix has wholly

failed to demonstrate that the Texas state court judgment is void.  A Texas judgment is void only

when there was a fundamental lack of jurisdiction over the matter, or the court lacked the capacity

to act as a court.  *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985).  In a recent case, the Dallas

Court of Appeals summarized the relevant Texas law:

> A judgment of a court of general jurisdiction is not subject to collateral attack in a
> court of equal jurisdiction unless the judgment is void.  *Browning v. Placke*, 698
> S.W.2d 362, 363 (Tex. 1985) (per curiam) (orig.proceeding). A judgment is void
> only if the court had no jurisdiction over the parties or property, no jurisdiction of the
> subject matter, no jurisdiction to enter the judgment, or no capacity to act as a court.
> *Id.* All other errors make the judgment merely voidable, and may only be corrected
> through a direct attack.  *Id. . . .*  A direct attack can be in the form of a motion for
> new trial, appeal, or bill of review.  *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 275
> (Tex. 2012).

*Sun Tec Computer, Inc. v. Recovar Group, LLC*, 2015 WL 5099191 (Tex. App. – Dallas, Aug. 31,

2015).  The Fifth Circuit has noted that:

> The Texas Supreme Court has attempted to clarify the difference [between "void"
> and "voidable" judgments] by stating that a judgment is void and subject to collateral
> attack only where it was rendered without "'jurisdictional power' in the sense of lack
> of subject matter jurisdiction. . . .  Absent one of those rare circumstances that makes
> the judgment 'void,' the mere fact that an action by a court of appeals is contrary to
> a statute, constitutional provision or rule of civil or appellate procedure makes it
> 'voidable' or erroneous." *Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex.1990);
> *see also Clayton v. Hurt*, 32 S.W. 876, 877 (1895) (holding that where court has
> personal and subject matter jurisdiction, "such judgment is never void, no matter how
> erroneous it may appear, from the face of the record or otherwise, to be").

*In the Matter of Gober*, 100 F.3d 1195, 1202 (5th Cir. 1996).

Hix argues that the judgment here is void for four reasons: (1) the plaintiffs lacked standing;

(2) the State of Texas, an indispensable party to the suit, was not joined; (3) the judgment altered

rights, status, and relationships in a manner not authorized under the Texas Declaratory Judgment

Act; and (4) the judgment interferes with a prior final judgment and decree of water rights adjudication pursuant to the Texas Water Rights Adjudication Act. Dkt. No. 25 at 2, 6. None of these qualify as the types of fundamental defects in jurisdiction that would render the state court judgment in this matter void.

As to the standing issue, after the hearing on these motions, Hix filed an "Advisory" which was in actuality a supplemental brief, where for the first time he briefs his claim that the Robertsons lacked standing to bring the underlying state court suit. Dkt. No. 31. He contends that because standing is a jurisdictional issue under Texas law, the Robertsons' lack of standing divested the state court of jurisdiction and its judgment is therefore void. Hix concedes that the state court actually addressed this standing argument and determined that the Robertson plaintiffs did in fact have standing to bring their claims, a decision the Waco Court of Appeals affirmed. *Hix*, 211 S.W.3d at 425-26. In brief, the Waco Court of Appeals noted that the Robertsons were seeking a declaration regarding whether the waters created by the flood control dam were part of a navigable stream. As the court notes in its decision, Texas case law allows a member of the public standing to raise this issue against a private landowner, as the State and the general public have a right of access to the waters of navigable streams. *Id.* at 426. The court also noted that the Robertsons were "owners of property fronting the lake formed by the dam on Hog Creek who have previously used the lake for fishing and have since been denied access to lake waters on Hix's land." *Id.*

In a clear sign that Hix is attempting to have this Court review and reverse the Texas court's standing decision, he recounts the Waco Court of Appeals' ruling and the cases it cited, and then argues that "these cases do not support the appeals court's conclusion and more recent cases are instructive on this issue." Dkt. No. 31 at 4. This is a rather plain example of a "state-court loser" "inviting district court review and rejection" of a state court judgment. *See Exxon Mobil*, 544 U.S.

at 284.  Hix is asking this Court to reject the standing analysis the state court actually made in this case, the very sort of action the *Rooker-Feldman* doctrine forbids.

Moreover, his criticism of the Waco court's decision is misplaced.  First, his argument that the Waco court reached the wrong decision is based on *SOS Alliance v. City of Dripping Springs*, 304 S.W.3d 871 (Tex. App. – Austin 2010), a case decided four years *after* the Waco Court of Appeals' decision.  And second, *SOS Alliance* does not support his argument that the Waco court was wrong, but instead reinforces the correctness of the Waco court's decision.  Hix claims that *SOS* was critical of *TRPA v. Tex. Nat. Res. Conserv. Comm'n*, 910 S.W.2d 147 (Tex. App. – Austin 1995, writ denied), the primary case that the Waco court relied on in finding that the Robertsons had standing to sue the Hixes.  *SOS Alliance* involved an association's challenge of agreements entered into by two private entities and the City of Dripping Springs.  SOS argued that the city had failed to post the meetings at which the agreements were approved in the manner required by the Texas Open Meetings Act.  The case had nothing to do with water rights or a suit seeking a declaration that a stream was navigable.   It addresses associational standing, not the standing of an individual landowner.  In fact, when it distinguished *TRPA* from the case before it, it did so by noting that one of the TRPA's members "owned property fronting the affected area of the river," and concluded that this individual's property rights created standing, but the same was lacking in the *SOS Alliance* case.  The court in *SOS Alliance* summarized its conclusion stating, "we do not find any Texas case in which an alleged injury to a plaintiff's environmental, scientific, or recreational interests conferred standing *in the absence of allegations that the plaintiff has an interest in property affected by the defendants' actions*."  *SOS*, 304 S.W.3d at 880.  Here, the state court case was a suit between adjoining landowners, both of whom own land abutting Hog Creek.  The Robertsons contended that the Hixes' actions affected the Robertsons' rights to enjoy the stream flowing through their property.  Given that the Robertsons were complaining about an injury they suffered as a result of their

11

ownership of land fronting on the creek, even the *SOS Alliance* court would have found the Robertsons clearly had standing to being their suit.

Hix next contends that the state court judgment is void because an indispensable party was not joined. This argument is frivolous, as it was rejected by the Texas Supreme Court over 30 years ago:

> A failure to join "indispensable" parties does not render a judgment void; there could rarely exist a party who is so indispensable that his absence would deprive the court of jurisdiction to adjudicate between the parties who are before the court. *Cooper v. Texas Gulf Industries, Inc.*, 513 S.W.2d 200, 204 (Tex.1974). All errors other than jurisdictional deficiencies render the judgment merely voidable and such errors must be corrected on direct attack.

*Browning*, 698 S.W.2d at 363.

Hix next contends that the state court judgment altered rights, status, and relationships in a manner that is not authorized under the Texas Declaratory Judgment Act. This claim is completely unsupported by any legal or factual authority. First, Hix fails to explain in what fashion the Texas trial court's judgment exceeded the bounds of the Texas Declaratory Judgment Act, nor does he cite any relevant Texas case law to demonstrate that assertion. Second, and more relevant here, Hix cites absolutely no authority for the proposition that a Texas state court judgment which "altered the rights, status and obligations of the parties which is not authorized by the Texas declaratory judgment act" is a void (as opposed to voidable) judgment. The Court specifically asked Hix's counsel at the hearing on these motions to provide the Court with such authority, and although she claimed there was such support, she was unable to provide it to the Court at the hearing, and she has failed to provide it since.

Hix's final *Rooker-Feldman* argument is "the Tenth Court of Appeals decision is void because it interferes with [and] modifies a prior final judgment and decree of water rights adjudication pursuant to the Texas Water Rights Adjudication Act entered in 1982." Dkt. No. 25

12

at 6.  Hix submits no evidence to support this claim in response to the motion to dismiss, but it appears to be based on these allegations found in Hix's First Amended Complaint:

> In 1982, the Texas Water Commission made a final determination of claims of water rights in the Bosque River Watershed of the Brazos River Basin pursuant to Texas Water Code, § 11.315, authorized by the Water Rights Adjudication Act of 1967, Title 2, Subtitle B, Chapter 11, Subchapter G. A certificate of adjudication finding that W.T. Hix had riparian water rights based on the Republic of Texas land grant to J.C. Bullock was issued in 1983.

Dkt. No. 13 at ¶ 22.  Hix (1) fails to articulate how the state court's judgment conflicts with this alleged "adjudication," (2) fails to state how any conflict, if one exists, between the state court judgment and the certificate of adjudication renders the Tenth Court of Appeals judgment void, and (3) once again, fails to cite any legal authority to support any voidness claim.  As the TWC adjudication is alleged to have taken place in 1983, and the underlying lawsuit was not filed until 2004, Hix obviously had every opportunity to raise this point with the Texas court.

Moreover, even assuming that the TWC concluded that Hix " had riparian water rights" in the lake created on Hog Creek, that is a wholly distinct legal issue from whether Hog Creek is a navigable stream and thus open to the public for recreational uses.  Riparian rights address such things as who is entitled to use the water for livestock, or to take water from the stream for irrigation or industrial uses.  *See* TEX. WATER CODE § 11.002(5) (defining "water right" for purposes of adjudications under the Water Rights Adjudication Act as " a right acquired under the laws of this state to impound, divert, or use state water").  It does not address who has the right to access a body of water for recreational purposes.  For example, there are hundreds of people that have the right to divert and use the water in the Guadalupe River, but this does not mean that the public does not have access to the river for recreational purposes.  The same is the case here.  Hix's ownership of riparian rights in the waters at issue has nothing to do with whether the stream is navigable and therefore open to the public for fishing and boating.  As a result, Hix's argument fails to demonstrate that there

13

is a conflict between the state court judgment and any prior water rights adjudication of the Texas Water Commission, much less that any such conflict would make the judgment void.

In summary, the Fifth Circuit has not recognized a "void *ab initio*" exception to the *Rooker-Feldman* doctrine. Indeed, it does not appear that any circuit has recognized the exception outside of the bankruptcy context. Further, even if the Court were to assume that such an exception applies, Hix has completely failed to offer a tenable legal argument demonstrating that the Waco Court of Appeals' final judgment from 2006 is void. His suit requires this Court to review and reject the Waco court's judgment. Hix's suit is barred by the *Rooker-Feldman* doctrine, and dismissal on that basis is appropriate.

**D.      Hix Does Not Raise a Federal Question**

Though this portion of Hix's briefing is confusing at best, it appears that he contends the Court has jurisdiction over this case notwithstanding *Rooker-Feldman* because the case somehow arises under federal law as a result of a preemption claim. In brief, Hix's argument is that the Waco court's opinion improperly "modified or altered a federal flood prevention project," that was initiated pursuant to the federal Watershed Protection and Flood Prevention Act, and that Act preempts the Waco decision, all of which raises a federal question giving this Court jurisdiction over the case. Dkt. No. 25 at 8. The argument relies on the assumption that the Tenth Court of Appeals' decision somehow modified the original Work Plan Agreement through which the flood control dam was built in the 1970s. (Consistent with many of the other twisted arguments he makes, Hix fails to explain how the court of appeals' ruling allowing recreational access to the lake in any way contravenes any term of the Agreement, which was basically an agreement among multiple parties to build the flood prevention dam.)

This argument is built on so many legal fallacies that it is difficult to identify them all. For example, Hix fails to explain how, even if the ruling was inconsistent with the 40 year-old

14

agreement, the agreement "preempted" state law.  Hix also overlooks the fact that while a claim of complete preemption can support federal jurisdiction, conflict preemption alone does not do so because conflict preemption is only a defense to a state court action.  *Giles v. NYLCARE Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir.1999).  In other words, if there ever was any preemption argument to be made, Hix had to make that argument back in the state court case.  Further, the federal statute at issue—the Watershed Protection and Flood Prevention Act—is merely a statute that gave state and local governments access to federal funds and advice to build flood control projects like the one built on the Hixes' and Robertsons' land in the 1970s.  The only federal involvement the Act contemplated was the providing of grants and technical advice.  The projects themselves were local projects overseen and completed by local bodies.  The Act says absolutely nothing about water rights on streams like Hog Creek, and thus could never preempt a state court determination of such issues. And finally, even if Hix could devise some tenable preemption argument, that is not enough to trigger the Court's jurisdiction to decide a declaratory judgment case like this one.  As the Supreme Court recently held, the Supremacy Clause does not create a cause of action and is not the source of any federal rights.  *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1383 (2015).  The same is the case for the FDJA.  *Schilling v. Rogers*, 399 U.S. 666, 677 (1960) ("the Declaratory Judgment Act is not an independent source of federal jurisdiction; the availability of such relief presupposes the existence of a judicially remediable right").  The Supreme Court also held in *Armstrong* that there is no implied right of action contained in the Supremacy Clause. 135 S. Ct. at 1384.  Hix's preemption claims simply cannot provide Hix a basis upon which he can maintain his Federal Declaratory Judgment Act claim.

**E.**     **Claims Against Unserved Defendants Should be Dismissed**

As noted at the outset, despite having filed this case on November 5, 2015, Hix has not served any of the defendants.  Though it was not served, Bosque County has responded to the suit

15

by filing the motion to dismiss presently before the Court.  When she was asked why she had not served the lawsuit on any of the other defendants, counsel for Hix stated that she was "waiting to see what would happen" with the pending motion.  As is clear from what has been said above, the suit is baseless and the Court lacks jurisdiction over it.  Given this, it is appropriate for the district judge to dismiss all of the claims against all of the defendants.  *See Manning v. Franklin*, 2015 WL 4039388 (S.D. Tex. 2015) (holding court could sua sponte dismiss claims against unserved defendants under *Rooker-Feldman* for lack of subject matter jurisdiction).

**F.     Texas Law Claims Should be Dismissed**

Hix also purports to bring a claim under the Texas Declaratory Judgment Act.  It is well-settled law that if the only claims remaining in a case after a motion to dismiss would be state law claims, a federal court should decline to exercise supplemental jurisdiction over those claims. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). *See also Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 876 (5th Cir. 2000) (declining exercise jurisdiction over supplemental state law claims following dismissal of all federal claims involved in case).  The Court therefore recommends that the district judge decline to exercise supplemental jurisdiction over Hix's requests for declarations under state law and dismiss those claims without prejudice.

### IV.  Motion for Sanctions

Bosque County has filed a separate motion for sanctions pursuant to FED. R. CIV. P. 11(c). It seeks sanctions against Hix and his attorney on two bases:  the case was filed for an improper purpose, in violation of Rule 11(b)(1); and the legal contentions made here are not warranted by existing law or a nonfrivolous argument for extending, modifying, or reversing existing law, in violation of Rule 11(b)(2).  As support for the motion, Bosque County notes the long history of this dispute, and the number of cases that Hix has filed, as well as the lack of legal authority for this case. Hix's response is well summarized here:

16

> At the time this case was filed and currently, both Hix and undersigned counsel believe the claims asserted are valid, they are warranted by existing law, and the factual contentions have evidentiary support. Bosque County has failed to establish that sanctions are appropriate. Just because Bosque County believes the state court correctly decided the issue of navigability doesn't necessarily make it so. Moreover, the fact that the Texas Supreme Court denied review of the state court decision doesn't mean this court can't review the state court record to determine whether the judgment is void. Bosque County has cited no authority to the contrary. Finally, Hix's First Amended Complaint seeks declarations regarding the duties of Bosque County and other governmental entities under the Hog Creek Watershed Work Plan which imposed legal and contractual obligations on those entities to maintain the project and improvements under federal law.

Dkt. No. 22 at 4-5. This paragraph, and particularly the statement that "[j]ust because Bosque County believes the state court correctly decided the issue of navigability doesn't necessarily make it so," speaks volumes on this point. It matters little whether Bosque County thinks the state court's decision was correct. What matters is that well-settled federal law recognizes that a final state court judgment between two parties settles that matter, and a "state court loser" may not file suit in federal court "complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.* 544 U.S. at 284.

The Court's analysis of the motion to dismiss was painstaking, in large part because of the pendency of this sanctions motion. As a result, the fallacies of Hix's lawsuit have been identified already. A few points merit emphasis, however. Hix has been litigating the question of the Robertsons' (and, presumably, the public's) right to access the flood retention lake for more than 10 years, in numerous courts and agencies. He has refused to accept the finality of the Waco Court of Appeals' decision. Further, this lawsuit was filed just two years after a similar federal lawsuit was dismissed under *Rooker-Feldman*, putting Hix on notice of the limits on the federal courts' jurisdiction to review the state court judgment. Third, Hix relies heavily on an alleged "void *ab initio*" exception to *Rooker-Feldman* to justify the present lawsuit. Dkt. No. 230 at ¶¶ 8, 12-13.

Without that exception, there is not even a marginally colorable basis for the filing of this lawsuit. But, as discussed in detail above, neither the Supreme Court nor the Fifth Circuit has ever recognized such an exception, and the few courts that have done so have only done so in bankruptcy cases. Nowhere in his briefing does Hix ever mention this, and the only cases he relies on for the existence of the exception do not support the claim.  He never makes a good faith argument for the recognition or extension of this exception to a case such as this.   Fourth, Hix's counsel's statements at the hearing on the motion underscore the lack of legal support for Hix's position.  When asked to identify a case supporting the argument that the Waco Court of Appeals' decision was void because it (allegedly) incorrectly decided the standing issue, counsel stated that she "didn't bring a case today that says that," and "I just . . . I, I don't have it handy," and "I don't have that with me your honor, but there is case law and I can provide it to you tomorrow.  I can provide it to you later this afternoon."[6]  Needless to say, that case law was never forthcoming.  Finally, despite the fact that Hix was on notice of the precariousness of his position by Bosque County filing the motion for sanctions, he continued to make arguments thereafter that were inconsistent with existing law.

This is also not a run of the mill Rule 11 motion.  Though represented, Hix is himself a licensed Texas attorney, and has been so licensed since 1971.[7]  He is therefore not the ordinary client, who is completely reliant on an attorney to advise him whether he is litigating a colorable argument, or is instead presenting a frivolous claim that serves only to harass and cause financial harm to those he sues.  Indeed, in at least some of the many cases related to these same issues that

---

[6]Digital recording of April 26, 21016 hearing at 10:49:00; 10:52:20; 10:53:35.

[7]*See* State Bar of Texas website profile for William J. Hix, State Bar No. 09730000, avail. at: https://www.texasbar.com/AM/Template.cfm?Section=Find_A_Lawyer&template=/Customsource/MemberDirectory/MemberDirectoryDetail.cfm&ContactID=172109 (last visited June 29, 2016).

he has filed in the past, Hix has represented himself. *See, e.g.* Dkt. No. 4-1 (Original Petition in CV-12163, filed on June 13, 2012 in Bosque County).

As noted, Bosque County moves for sanctions under both Rule 11(b)(1) (a suit filed for an improper purpose) and 11(b)(2) (a suit filed without a basis in law). The Rule states that "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." FED. R. CIV. P. 11(c)(1). A court may not impose a sanction on a represented party for a violation of Rule 11(b)(2), however, as it is aimed at frivolous legal claims lacking any good faith argument to extend or change the existing law, and thus is targeted at attorneys who sign such pleadings. *Id.* at 11(c)(5)(A). Other than this limitation, however, a court may impose sanctions on any "party . . . that is responsible for the violation." *Id.* at 11(c)(1). The Fifth Circuit has affirmed the award of fees against a party when the evidence supports the fact that the party was responsible for the violation. *Elliot v. M/V Lois B*, 980 F.2d 1001, 1007 (5th Cir. 1993).

The rule also requires that, prior to the filing of the motion for sanctions, the movant must give the offending party notice of the intent to seek sanctions, and allow the party the opportunity to withdraw the challenged pleading. Rule 11(c)(2). Bosque County complied with these requirements. Very early in the case, it filed an Advisory giving the Court and Hix notice of the filing of the 2013 lawsuit, and of the dismissal of that suit on *Rooker-Feldman* grounds. Dkt. No. 3. It also followed the 21-day notice requirements of Rule 11(c)(2), having served the motion on Hix more than 21 days before it filed it. Dkt. No. 12 at 70. Notwithstanding this, Hix chose to continue to pursue this case, and make the baseless arguments related above. Bosque County has therefore met the procedural prerequisites to seeking sanctions.

The advisory committee notes to the 1993 amendments to Rule 11 provide a list of factors a court should consider when deciding whether, and against whom, to impose a sanction:

> Whether the improper conduct was willful, or negligent; *whether it was part of a pattern of activity, or an isolated event*; whether it infected the entire pleading, or only one particular count or defense; *whether the person has engaged in similar conduct in other litigation*; whether it was intended to injure; what effect it had on the litigation process in time or expense; *whether the responsible person is trained in the law*; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants: all of these may in a particular case be proper considerations.

Advisory Committee Notes to 1993 Amendments of Rule 11 (emphasis added). The emphasized factors all have applicability here. As noted, Hix has been litigating these issues for over a decade. Since the judgment of the Waco Court of Appeals became final, he has filed no less than three separate lawsuits seeking, in one way or another, to re-litigate the issues he lost. Hix has made the same sort of contorted—indeed, desperate—legal arguments in those cases, and has thus engaged in the same sort of conduct in those cases. And this is all the more reprehensible given that Hix is a licensed attorney, and thus is well aware of the fact that he is abusing the courts by his conduct.

There is evidence as well that Hix was directly involved in the decision to continue to pursue the case even after being put on notice of its baselessness. In January of this year, Bosque County's counsel reached out to Hix's attorney to put her on notice of the problems with her case, and the following dialogue ensued:[8]

To counsel for Hix from counsel for Bosque County:

I called and left a voicemail message and I would like to speak with you about the Hix matter.

---

[8]The emails are attached as an exhibit to the Motion for Sanctions. *See* Dkt. No. 12 at 66-69. In reprinting the conversation here, the Court has edited out the headers, date and time stamps, and names.

We represent Bosque County and we have been involved in two prior lawsuits brought by Mr. Hix relating to this matter.

Please give me a call at your earliest convenience so we can discuss the matter in greater detail.

Best regards

Response from counsel for Hix:

Hi,

I was unaware of the lawsuit in Judge Smith's court, I have a message into Mr. Hix. Obviously under the circumstances my inclination is to dismiss the County from the suit, but I need to visit with Mr. Hix first. I will get back in touch with you ASAP. Please say hello to Patrick for me.

Response from counsel for Bosque County:

Thanks,

I sort of thought that you were unaware of that that [sic] matter. I will make sure to give your best regards to Pat.

Best regards

Response from counsel for Hix:

Good Morning,

FYI, I was out of office in Houston yesterday, and heading downtown now for jury trial set in criminal court. I have spoken to Mr. Hix and there is one thing he wanted me to check into before making any decisions about going forward. If the trial doesn't go today, I should be able to get back with you by tomorrow. If the trial does go forward, I won't be able to contact you about Mr. Hix's decision until Monday. I hope this will work for now. Have a good day.

Response from counsel for Bosque County:

Good morning,

This sounds like a continuation of the same sort of frivolous litigation your client has engaged in for years. I'll try to serve our Motion for Sanctions later today.

Best regards

Response from counsel for Hix:

Wow, you sound angry. Do what you need to do. I'll respond accordingly.

Response from counsel for Bosque County:

Please don't misinterpret an email that I drafted while driving. I'm not angry with anyone. And I've no reason to be angry with you.

I rarely consider a sanctions motion.  However, this case is one of those that warrants it.

Best regards

Response from counsel for Hix:

Well in light of your e-mail, I have no other conclusion to draw.

Response from counsel for Bosque County:

The motion for sanctions should come as no surprise. My email on the 8th explicitly states that I wanted to confer with you prior to seeking sanctions from the Court.

Your client has a history of not doing what he says he will do. I've defended two lawsuits your client filed on this same subject matter over the last three years.

We just need to start the clock running is all.

There aren't any personal feelings involved.

Best regards

Two facts stand out from this dialogue.  First, Hix's attorney in this case was unaware that he had filed a similar federal lawsuit two years earlier, and thus Hix did not advise her he had filed that lawsuit, or that it had been dismissed as an improper collateral attack on a final state court judgment. Second, before agreeing to dismiss this case against the County, Hix's attorney stated that she would need to confer with her client.  In her next message she states that she had "spoken to Mr. Hix and

22

there is one thing he wanted me to check into before making any decisions about going forward." At this point, Bosque County served the motion for sanctions, to start the 21 day "safe harbor" period running. As we know, Hix chose not to withdraw the suit. This email exchange further supports the Court's conclusion that sanctions against Hix himself are appropriate under Rule 11(b)(1).

Sanctions are also appropriate against Hix's attorney. It appears from the early email that she was inclined to abandon the suit when she learned of the prior federal dismissal. She plainly changed her mind, however, and aggressively pressed forward, so much so that in her response to the Rule 11 motion she contends that Bosque County's request for sanctions was itself sanctionable. Dkt. No. 25 at 7. The Court will not repeat what it has said above regarding the lack of legal support for the claims presented here. As it has noted, the legal argument Hix's attorney relies on for her claim that this suit fits within an exception to the *Rooker-Feldman* doctrine has no basis in existing case law. The only time that exception has been applied has been by bankruptcy courts, and even then it has been applied sparingly. In case law existing before the argument was made here, the Fifth Circuit explicitly noted that neither it nor the Supreme Court had ever recognized the existence of the exception, and Hix's attorney failed to find, or cite that case law. And then when she was presented with that case law, she continued to rely on inapplicable cases—all of which made it plain that she had not made a good faith investigation into the legal support for the arguments she was presenting to the Court. To cap things off, this occurred when counsel was on notice that she had a client who had litigated this dispute serially, and that her opponent believed she was making a frivolous argument. She thus had more than enough reasons to do thorough and accurate research and failed completely to do so, telling the Court at the hearing on the sanctions motion that she had failed "to bring a case today" to supprt her argument.

Bosque County requests that the Court award it the costs it has incurred in defending against this suit.  In deciding what the appropriate sanction is, a Court should seek the least severe sanction needed to deter the conduct at issue.  Rule 11 states that:

> A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

FED. R. CIV. P. 11(c)(4).  As noted, this is not the first attempt by Hix to alter or attack the unfavorable state court judgment regarding the issue of access to the Hog Creek lake.  Hix is an attorney, and thus knows the limits the law places on attacking final judgments.  Neither this knowledge, nor his lack of success in prior cases, deterred him from filing even more cases, like this one.  Further, Bosque County has been put to the expense of defending a lawsuit that never should have been filed, and it is reasonable for the sanction here to be the repayment of those costs and expenses. The case is the same with regard to Hix's counsel.  She was put on notice early in the case that the case was meritless, and nevertheless continued to pursue it based on spurious legal arguments.  She failed to adequately investigate the legal underpinnings (or lack thereof) of her case before filing the suit, and she was unaware that current case precedents defeated her primary argument.  Further, she continued to prosecute the suit after receiving notice of its defects.  Making her jointly and severally liable with her client for the costs they collectively caused Bosque County to incur is appropriate, and is the least severe sanction that serves the purposes of Rule 11.

24

## IV. RECOMMENDATION

For all of the reasons set forth above the undersigned RECOMMENDS that the district jduge GRANT Bosque County's Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. No. 15) and DISMISS all claims against Bosque County for lack of subject matter jurisdiction. Additionally, the Court RECOMMENDS that the district judge sua sponte DISMISS the claims against all remaining defendants for lack of subject matter jurisdiction.

Additionally, the Court RECOMMENDS that the district judge GRANT Defendant Bosque County's Rule 11(c) Motion for Sanctions (Dkt. No. 12), and impose sanctions against both William J. Hix, and his counsel, Regina Bacon Criswell, jointly and severally, for all of the attorney's fees and costs Bosque County has reasonably incurred in responding to this suit. The Court recommends that the district judge order the parties to follow the procedures set forth in Local Rule CV-7(j) to determine the amount of the attorney's fees and costs, and in the event the amount is not agreed upon, the Court recommends that the district judge refer that issue back to the undersigned for determination. It is LASTLY ORDERED that this case be REMOVED from the docket of the undersigned and placed on the docket of the Honorable Lee Yeakel.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report

shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

      SIGNED this 6th day of July, 2016.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE